1813.
Pottenger
vs
Steuart

---

POTTENGER's Ex'x. *et al.* vs. STEUART, *et ux.*                DEC. 1813.

APPEAL from a decree of the Court of Chancery. The case, so far as is material, appears to be fully stated in the chancellor's decree.

KILTY, Chancellor, (December term 1807.) The bill originally filed was by *Steuart* and wife, against *Mary Pottenger*, as executrix of *Robert Pottenger*, to which an amendment was made, making *John Gassaway* a party defendant. A cross bill was also filed by *M. Pottenger*, ex-

N. G. by his will dated in 1784, devised as follows. "I give and bequeath unto my son J G, and to the heirs of his body lawfully begotten, all my real estate, at the age of 25 years, provided he does not marry before he arrives to the age of 21 years; if he does, it is then my will that no part of my real estate shall be

delivered up to him till he arrives to the age of 25 years. And the profits arising on the said real estate during the term of five years, to be equally divided between my two daughters hereafter named. But if my said son J should die without lawful issue, I then give and bequeath unto my daughters M and S, and to the heirs of their bodies lawfully begotten, all my real estate, to be equally divided between them It is also my will, that if my said daughters should marry before the age of 25 years, that then my said real estate shall be taken into the possession of my executors hereafter named, and not to be given to them till they arrive to the age of 25 years." He then bequeathed to his said two daughters all the money due to him, upon bond, &c. to be equally divided between them when they arrive to the age of 21 years And after the payment of his debts, he bequeathed to his said three children all the residue of his personal estate, to be delivered up to them when they arrived to the age of 21 years, to be equally divided amongst them; and appointed R P his sole executor, and died in 1791. J G, the son, arrived at the age of 21 years in December 1796, without having married—*Held*, that J G, the son, took an estate tail *in presenti* with a remainder in tail to the two daughters M and S, as tenants in common; and that the two daughters were not to have any of the profits of the real estate, only on the contingency of the son's marrying before 21.

M, under the age of 21 years, but above the age of 16, by power of attorney authorised J G to make a settlement with R P, of her portion of her father's real and personal estate. Such settlement was made, and the property delivered to, and a receipt given by, J G, on which settlement M became indebted to R P in 1617 9 9, for which sum J G gave his bond. On a bill filed in chancery by M and her husband, against the executrix of R P, to set aside the settlement so made, and to have an account of the said estate, the defendant pleaded and relied on the said settlement and payment to J G as a bar—*Held* that the settlement be annulled and set aside, and that the defendant, as executrix of R P, she having admitted assets, account with the complainants, &c.

In cases of intestacy, or there being no contrary direction by will, a female, above the age of 16, would be capable of authorising any person, by a common order, to receive her estate, by which she would be bound as far as any payment or delivery should be made. But it is not so clear that she would be bound by a settlement made by her agent, although specially authorised by her. *Per Kilty*, Chan.

ecutrix as aforesaid, against *John Gassaway*, who answered both bills.

The object of the original bill is to set aside a settlement that was made by *John Gassaway*, of the profits of the estate real and personal of *Nicholas Gassaway*, deceased, due to *Mary Gassaway*, then a minor, under a power of attorney executed by her, and to have an account of the said estate, and payment of the sum found due. An account of the assets left by *R. Pottenger* is also prayed for. The defendant, *M. Pottenger*, in her answer, states the power of attorney given by *Mary Gassaway*, (now the complainant *Mary Steuart*,) to *John Gassaway*; the delivery by *R. Pottenger* to *John Gassaway* of the said *Mary's* share of her father's negroes, and other property, and his receipt for the same; a final settlement of her accounts before the register of wills of *Anne-Arundel* county, who had stated an account; and that the said *Mary* was indebted for education and maintenance in the sum of £617 9 9, for which *John Gassaway* gave his bond. And the defendant pleads and relies on the said statement and payment to *Gassaway*, as a bar to the claim; but admits a sufficiency of assets. It appears from the evidence exhibited, that *N. Gassaway* died on the 26th of May 1791, having duly executed his last will on the 19th of July 1784, of which he appointed *R. Pottenger* sole executor, who, as is admitted in the answer, took out letters testamentary thereon. That *R. Pottenger* took possession of the estate, and that he employed an overseer, who went there soon after, to wit, in June then next; but that neither *Pottenger*, nor any other person, was appointed as guardian. That the possession was held until December 1796, when *John Gassaway* became of age; and that the settlement above mentioned was made in November 1798, when the complainant, *Mary*, was a minor.

In cases of this kind it has been usual for the parties to consent to a decree to account, reserving all equity; but it is a course that is optional with them, and not being consented to by the parties, the most important question in the suit is now to be decided, to wit, Whether the complainants are entitled to an account, or whether the settlement which is pleaded and relied on, or any other circumstance, is a bar to their claim? Upon a full examination

1813.

Pottenger
vs
Stuart

of the subject, the chancellor is clearly of opinion, that the claim of the complainants is not barred by the defence set up, but that they are entitled to an account. The reason for which, and the manner in which it is to be taken, will be stated.

From the interrogatories in the bill, it will be perceived that an account is prayed of the personal estate of which *R. Pottenger* was the executor, and also of the profits of the real estate, for which he is properly charged as guardian, on the ground of his having entered upon the land, and received the profits. And it appears that he considered himself as guardian, and acted as such, by which it may be presumed that the choice of a guardian by the infants, or the appointment of one by the court, was prevented.

The objections to the settlement made in 1798 are, that *Mary Gassaway* being then a minor, was incapable of executing a valid power of attorney. That supposing she would otherwise have been of a sufficient age to receive her estate, (being above 16,) yet the directions contained in the will restrained her power until the age of 21. That the settlement was in itself erroneous and improper; and that supposing it to have been made by her in person, and after she attained the age of 21, yet if made immediately after, when the influence of her guardian might not have ceased, it would have been liable to be opened by this court.

The answer made by the defendant's counsel to the first objection, is grounded on the act of 1715, *ch.* 39, *s.* 15, which declares that female orphans shall be accounted of full age to receive their estates at the age of 16, or day of marriage, which shall first happen. Without deciding how far the general rule of law is altered by that act, the chancellor is of opinion, that in cases of intestacy, or their being no contrary direction by will, a female, above the age of 16, would be capable of authorising any person, by a common order, to receive her estate, by which she would be bound as far as any payment or delivery should be made. But it is not so clear that she would be bound by a settlement made by her agent, although (as in this case,) specially authorised by her. But the act of assembly ought not to be so construed, as to take away the power of limiting, by will, the time when such female shall receive her estate. The will in this case bequeaths to the two daughters all

the money, to be equally divided between them at the age of 21. The residue of the personal estate is given to the three children, to be delivered up to them at the age of 21. And in the devise of the real estate to the daughters, in case of the death of *John*, it is directed, in case of their marrying before the age of 21, not to be given up to them until they arrive at the age of 25. This direction in the will was remarked on by the counsel, and the chancellor considers that it might form alone a sufficient objection to the settlement that was made. It is admitted by the defendant's counsel, that *Mary Gassaway* was not authorised, before 21, to demand or sue for a settlement. but it is urged that she might before that age receive her estate. But the chancellor is of opinion, that the settlement or payment at that time was in contravention of the will of the testator, and ought not to be countenanced by a court of equity.

In considering the third objection arising from the nature of the account itself, it will be necessary to take a view of the situation of the parties. The office of guardian is certainly an arduous one, but when undertaken, (more especially if without a regular appointment,) it ought to be performed not only with fidelity, but also with skill and attention, at least to a reasonable degree. By the will of *N. Gassaway*, *R. Pottenger* was appointed executor, but was not named as guardian. It appears, however, that he immediately took possession of the real estate—employed an overseer, and exercised every other act of temporary ownership; and although it is in evidence that sometime after he requested another person to take the management in his place, it does not appear that he ever applied to the court to be appointed guardian.

If this reasonable and obvious step had been taken, the laws would have pointed out his course. Neither the act of 1715, *ch.* 39, or that of 1785, *ch.* 30, would have justified his expending, in the maintenance or education of the orphans, sums so entirely unproportioned to the profits of the estate; and the difficulties would have been lessened by making annual settlements in the orphans court, as the latter act directs. The same act provides also, that in case the produce of the estate is not sufficient to maintain and educate the minor, a part of the principal of

the personal estate may be applied by order of the orphans court.

The chancellor has not been able to discover from the evidence, or from the statements made in the course of the argument, the precise grounds of the settlement, so as to leave due to *R. Pottenger* the sum of £617 9 9, for which he took *J. Gassaway's* bond, nor the particular articles of the estate, (besides the slaves,) which were delivered up; nor does it appear to him with certainty whether the sums, credited in the paper written by the register of wills, were taken into the account. But on taking from the amount of the charges, to wit, £820 7 7, the several sums credited, independent of the £77 17 10 for interest received on certificates, the sum due would be only £515 3 10, supposing the personal estate, (being £748 5 3,) to have been paid over to her, and admitting the £125 to be the whole amount of her share of *R. Pottenger's* bond due to the testator. The result of the settlement, and of the bond given in her behalf, was that she had only her share of the personal estate, without having received any profit from the real estate, but on the contrary charged with upwards of £21 for its support, and charged with the principal and interest of the sums expended for her maintenance, for which no aid had been drawn from the interest of her estate.

The chancellor has considered the several items contained in the account marked *A.*

The first credit arising from the settlement made by the orphans court, will not be remarked on at present. On the debit side there is, (in addition to other sums for clothing and advances of money,) a charge of £335 5 3, paid for board, &c. in *Baltimore*, to the 21st of March 1794, and a charge of £108 1 7, for interest thereon.

With respect to the principal sum, it may be a question how far a guardian is to be protected where such expenditures were made for the advantage of the infant, and how far she ought to be answerable for them.

In regard to the propriety or legality of charging any interest on those sums, it is to be observed, (in addition to other objections,) that although possession was taken of the personal as well as of the real estate in 1791, and the inventory was taken in December in the same year, the final settlement with the orphans court, and the sale of the fur-

niture and stock, did not take place until the year 1798, and the settlement was made without any charge of interest against the executor. It was the duty of the executor, when the debts were paid, within the time prescribed by law, to pay over or to retain, as guardian, the balance, which if properly applied would have prevented the accumulation of charges against the infants. Among the charges there is one of £43 1 2, paid to *J G* for board, which according to his testimony was not paid in money, but was discounted out of a debt due to the estate.

The other charges, (and in the chancellor's opinion the most exceptionable,) consist of sums expended for the use of the plantation, which exceed the amount of the profits. Whatever may be the result of the testimony of *J S,* and the other witnesses, as to the value of the land and stock, and whatever may be the degree of care and diligence which the law requires from a guardian or receiver, the chancellor cannot doubt of the power and justice of opening a settlement by which the heirs, who were entitled to the profits of the real estate till the devisee arrived of age, should be brought in debt by the way in which it was managed.

The receipt given by *J. Gassaway* on the 17th of November 1798, is so general in its terms, that no knowledge can be derived from it of what was actually paid or delivered; but it is for the full part and proportion of the estate devised to *Mary Gassaway*, under the will of *N. Gassaway.* Some information is, however, given by the answer of *J. Gassaway.* He admits the receipt of certain bonds in the manner stated in his answer. He admits that he is responsible for one third of the proceeds of the final sale of the effects of *N. Gassaway*, and the half of certain certificates, but he states, that no part of the complainant's claim has been paid, except the negroes. For them, and for the proportional share of the personal property sold on the 26th of April 1798, a receipt was given by him on the 30th.

The principle stated in the fourth objection is recognized in *Hicks vs. Hicks*, 3 *Atk.* 274, and in other authorities; and if the acts of persons, immediately after arriving at the age of 21, are entitled to the favourable interposition of a court of equity, the reasons for it must be much

stronger, where, under a construction of an act of assembly which is at least doubtful, an infant under that age, although past 16, is suffered to make a settlement by herself or by means of a power of attorney executed under the same disadvantages, and in contradiction as to time to the will of the testator.

The chancellor is therefore of opinion, that the settlement made by *J. Gassaway*, on behalf of *Mary*, the complainant, with *R. Pottenger*, ought to be set aside; and that the defendant, his executrix, having admitted assets, ought to account with the complainants according to the prayer of their bill. With respect to the manner of taking the account, it will be observed, that the complainants have stated that they did not relinquish any part of their claim against the defendant. And in the cross bill by *M. Pottenger*, as executrix of *R. Pottenger*, against *J. Gassaway*, she prays that he may be decreed to pay any sum which may be decreed to the complainants from her. In order, therefore, to enable the court to decree in either way, it seems proper that an account should be stated, crediting the defendant with such sums as *J. Gassaway* may be liable for; and that another should be stated without such credits.—*Decreed* accordingly—and as to the cross bill by *M. Pottenger* against *J. Gassaway*, the same is reserved for the decision of this court.

Several reports and statements were made by the auditor, to which there were various objections made by the complainants, and by the defendant, *M. Pottenger*.

KILTY, Chancellor, (September term 1809.) In the decree at December term 1807, the chancellor expressed his opinion that the settlement made by *J. Gassaway*, on behalf of *Mary* the complainant, with *R. Pottenger*, ought to be set aside, and with that view the several accounts were ordered to be taken; and as to this part of the first suit—*Decreed*, that the said settlement be annulled and set aside.

The items contained in that settlement will nevertheless be considered, as far as they are or ought to be included in the present accounts.

The next point to be considered, is the manner of ap-

portioning the relief to which the complainants may be en-titled against the several defendants.

It is to be observed, that although the complainants pray-ed leave to amend their bill by making J. Gassaway a defendant, they stated in their petition that they did not conceive it necessary, and an agreement was signed by the counsel for the defendant, M. Pottenger, that it should not operate to the prejudice of the complainant's claim against her; and, from the exceptions filed by them, it ap-pears that they object to any credit being given to the de-fendant, M. Pottenger, on account of property delivered, or payments made, to J. Gassaway. If this point rested solely on the validity of the power of attorney to J. Gossaway, the chancellor is inclined to the opinion that he could not be made a party to the cross bill, so as to exone-rate the executrix of R. Pottenger; but inasmuch as the de-livery of the property to J. Gassaway has been in some de-gree acquiesced in by the complainant, Steuart, and a part thereof, to wit, his share of the negroes has been actually received by him, it is considered just, and within the pow-er of this court, on the whole proceedings, more especially as the complainant was not obliged to file the amended bill, to credit the estate of R. Pottenger with such sums as J. Gassaway may appear to have received from him, and to charge J. Gassaway therewith, and with such other sums as he may be found liable for—which he states him-self willing to account for, and which it is proved he has sufficient funds to pay; and in this way a circuity of reme-dies is avoided.

The accounts which the auditor has deemed it necessary to state, together with those which were directed by the counsel for the parties, and by the complainant himself, are so numerous as to render the subjects of them very complicated, and the examination extremely difficult and laborious.

Upon a full investigation of these accounts, with the re-ports of the auditor, and exceptions thereto, (which are also numerous,) the chancellor is not satisfied that any of them ought to be confirmed, so as to be made the basis of his decree, without deciding on each particular exception. The objections to the several statements will be inciden-tally noticed in stating the principles which it is thought proper to adopt in the settlement, and the additional ac-

counts which it has been found necessary to have stated.

It will not be necessary to repeat the observations which were made in the interlocutory decree; but the chancellor is still of opinion, that under all circumstances R. Pot-tenger, considered in the light of a guardian, was answerable for what might, by reasonable attention and diligence, have been annually produced by the estate; and from the evidence he considers that he ought to be charged with the sum of £300, as the annual value of the land, negroes, stock and plantation utensils. [The chancellor then takes up the several items, &c. in the accounts, making various observations thereon, and amongst others the following:] The next charge is one-third of the balance of the personal estate, according to the final account passed by the orphans court, which, notwithstanding the uncertainty above mentioned respecting the allowance for the corn, and some other doubtful items, the chancellor has not thought it proper to depart from.

By these accounts there appears to be a balance due to the complainants from the defendant, M. Pottenger, as executor of R. Pottenger, of £913 14 3, up to the 1st of February 1808, which will be the ground of the decree in this part of the case. And it is to be observed, that whatever sums R. Pottenger was answerable for as executor, he became also, (as far as the balance remained,) answerable for as guardian; and that it is only for the sake of perspicuity that the accounts are stated against him in those different capacities.

By the same account J. Gassaway is made debtor to the complainants in the sum of £1249 5 3, being the aggregate of the credits given to R. Pottenger for articles delivered to J. Gassaway. Another account was directed to be stated between J. Gassaway and the complainants, charging him with, &c. by which the balance due from him to the 1st of February 1808, including interest, &c. amounts to £1413 14 3.

The cross bill prays that J. Gassaway may be decreed to pay any sum which may be decreed to the complainants from the executrix of R. Pottenger; but this cannot be extended further than to the sums for which he (Gassaway,) is justly answerable, and which so far lessen the amount that R. Pottenger's estate would otherwise be liable

for. Nor can the condition of the bond of indemnity from *J. Gassaway* to *R. Pottenger*, be construed to give validity to the settlement made, or to enforce it against *Gassaway*, when it has been annulled as against the complainants.

The object of this bill appears to have been misapprehended by the defendant, *Gassaway*, in the first part of his answer, which relates to his own bond dated in November 1798, but in the sequel of the answer the bond and mortgage from him to *R. Pottenger*, referred to in the bill, are omitted. The bonds and mortgage cannot be cancelled, as is prayed by the defendant, *Gassaway*, because his own bond, and that given by *A. White*, (who married the other sister,) have no relation to the present suits, and because the decree to be made against him will be on the bill, as amended, and the cross bill, and will involve a decision upon the extent of the obligation arising from his bond of indemnity on account of the complainant, *Mary*.

There is another part of the case which it is necessary to determine on, viz. Whether under the prayer for general relief in the cross bill, and under the prayer of the amended bill, a sale of the property mortgaged by *J. Gassaway* to *R. Pottenger*, ought to be decreed, in order to raise the sum found to be due from *J. Gassaway*? The chancellor is of opinion, that the complainants are entitled, in the first place, to the benefit of the mortgage which was taken by *R. Pottenger* as a further security on the bond given by *J. Gassaway*, on the delivery of the property of his sister *Mary* to him, notwithstanding that the mortgage was taken also to secure other claims.

According to the usual course of proceeding in decrees on accounts in this court, the sums due from the defendants respectively, on the 1st of February 1808, although they are the aggregate of principal and interest, will bear interest from that day. *Decreed,* that the defendant *M. Pottenger,* executrix of *R. Pottenger,* do pay to the complainants, or bring into this court to be paid to them, £913 14 3 current money, with interest thereon from the 1st of February 1808, until the same be paid, &c. *Decreed* also, that unless the defendant, *J. Gassaway,* shall on or before the 26th of March 1810, pay to the complainants or bring in, &c. the sum of £1413 14 3 current money, with interest from the 1st of February 1808, until paid, &c. the tracts of land in the

1813.

Pottenger
vs
Stewart

proceedings mentioned, which were conveyed by the said J. *Gassaway* to the said *R. Pottenger*, by deed of mortgage dated the 8th of January 1800, or such part of the said tracts, or either of them, as may be sufficient, shall be sold. That —––– be and he is hereby appointed trustee for the purpose of making the said sale, &c. *Decreed* also, that the parties respectively pay their own costs. From this decree the defendants appealed to this court.

The cause was argued before CHASE, Ch. J. and NICHOLSON, and EARLE, J.

*Pinkney*, (Attorney-General *U. S.*) *Shaaff* and *T. Buchanan*, for the Appellant, *R. Pottenger*, referred to the will of *N. Gassaway*, mentioned and set out in the record, dated the 19th of July 1784, wherein, amongst others, are the following devises, viz. "*Imprimis*. I give and bequeath unto my loving son *John Gassaway*, and to the heirs of his body lawfully begotten, all my real estate, at the age of twenty-one years, provided he does not marry before he arrives to the age of twenty-one years; if he does, it is then my will, that no part of my real estate shall be delivered up to him till he arrives to the age of twenty-five years. And the profits arising on the said real estate, during the term of five years, to be equally divided between my two daughters hereafter named. But if my said loving son, *John Gassaway*, should die without lawful issue, I then give and bequeath unto my loving daughter, *Mary Gassaway*, and my loving daughter, *Sarah Cotter Gassaway*, and to the heirs of their bodies lawfully begotten, all my real estate, to be equally divided between them. It is also my will, that if my said loving daughters should marry before the age of twenty-one years, that then my said real estate shall be taken into the possession of my executors hereafter named, and not to be given to them till they arrive to the age of twenty-five years." "*Item*. I also give and bequeath unto my said two loving daughters, all the money that should be due me at the time of my death, either upon bond, note, certificate, or open accounts, including the interest thereon, to be equally divided between them when they arrive to the age of twenty-one years. And after the payment of all my just debts, I give and bequeath unto my said three loving children, all the residue of my personal estate, to be delivered up to them when

they arrive to the age of twenty-one years, to be equally divided amongst them." He then appointed Doctor *Robert Pottenger* his sole executor. The testator died in 1791. His son, *John Gassaway,* was born on the 12th of December 1775. His daughter *Mary,* (one of the complainants,) was born on the 4th of January 1779; and his other daughter, *Sarah Cotter,* was born on the 6th of October 1780. They stated, that the *first* question was, Who was to receive the profits of the estate? *J. Gassaway* arrived at the age of 21 years on the 12th of December 1796, without having married. The chancellor, by his decree, does not state what portion of the estate the daughters were entitled to. They were not entitled to the profits of the estate upon *J. Gassaway's* arriving to the age of 21 years, unmarried, as it cannot be presumed the testator intended that his son should have no part of the rents and profits until he arrived to the age of 25. He was the first object of the testator's bounty, and it cannot be supposed he was left unprovided for until he attained the age of 25. The devise to *J. Gassaway* must operate as a devise *in presenti,* and in no other way; and if so, he was entitled to the profits during his minority. If he married before 21, then the profits, after that time, and until he arrived to the age of 25, would go to the daughters. The profits were to be separated from the estate only on the son's marrying, when the daughters were to come in for those arising between the time of the son's marriage and his arrival to the age of 25. It is clear from the will, and the intention of the testator, that the profits should go to the son unless he married before 21, and if he did, he was then to be debarred of them until he arrived to 25 years of age. They referred to *Doe vs. Lea,* 3 *T. R.* 41. *Heath vs. Perry,* 3 *Atk.* 102; and *Thomas vs. Wootton,* 4 *Harr. & M'Hen.* 428.

2. That under the act of 1715, *ch.* 39, females were accounted of age at 16, or day of marriage, for the purpose of receiving their estate; and although, under the will, the daughters of *N. Gassaway* could not at the age of 16 demand their property, yet it did not prevent their estate being delivered to them at that age.

*Harper* and *Magruder,* for the Appellees, contended, 1. That the power of attorney executed by *Mary,* one of

the appellees, before the age of 21, was null and void; that the act of 1715, ch. 39, makes females of age at 16, to enable them to receive their estate, but for no other purpose. They referred to *Low vs. Gist,* 5 *Harr. & Johns.* 106, *(note.)*

2. That a guardian shall not be allowed for any sum of money beyond the amount of his ward's estate for her education and maintenance. They referred to the act of 1785, ch. 80 *Chaplin vs. Chaplin,* 3 *P. Wms.* 365; and *The Attorney-General vs. Syderfin,* 1 *Vernon,* 225.

3. That the devise to *J. Gassaway* was an executory devise; and that until his arrival to the age of 25, the profits of the estate were to be equally divided amongst all the children claiming as heirs of the testator. They referred to 2 *Fearne,* 18, 24, 25. *Clarke vs. Smith,* 1 *Lutw.* 798.

CHASE, Ch. J. delivered the opinion of the court. It is the manifest intention of the testator that *John Gassaway* should take an estate in tail *in presenti,* with a remainder in tail to his two daughters, *Mary* and *Sarah,* as tenants in common. It is also his intention that his son should not marry before he attained the age of 21; and to secure a compliance with this prohibition to marry before 21, the testator imposes the penalty on him of loss of the profits for five years, and vests them in his daughters on the contingency of his marrying before 21. It certainly was not his intention to deprive his son of any of the profits of his real estate unless he did marry before he attained the age of 21, nor was it his intention the profits should vest in his daughters only on the contingency of his son's violating the prohibition.

The testator directs, in case his son should marry before 21, that no part of his real estate should be *delivered* up to him until he arrived to the age of 25 years. A similar restriction is imposed on his daughters. Such a construction is to be made of the will as will best effectuate the intention of the testator, if it does not contravene some rule or principle of law. It is very plain the testator did intend the son should not possess and manage his real estate before 21, and that he should not be deprived of the profits, unless he married before 21, for he vests them in the daughters only on that contingency, and then only for

*five* years. If an estate tail vested in the son, possession to be delivered *in futuro* on his attaining the age of 21, did not the testator dispose of all his real estate, except the reverson after the remainder in tail to his daughters? If so, to whom did the profits belong but the son from the death of the testator until the son's attainment to the age of 21?

If any interest remained in the testator undisposed of, except the reversion, what was it; and could it be more than the profits from the death of the testator until his son should arrive at the age of 21? He certainly did not consider them as distinct from the estate devised to his son, and his only intention was, that his son should not take possession, and manage the estate, before he attained his age of 21. He has not made a particular disposition of the profits, and it is plain that he did not intend his daughters should have any of the profits of the real estate only on the contingency of the son's marrying before 21. That contingency never happened, and the daughters are not entitled to any part of the profits of the real estate. If the estate vested in the son, and would have descended to his issue in case of his marrying, dying, and leaving issue, before he attained the age of 21, the profits must attach to the immediate vested interest devised to the son, as an inseparable incident, there being no disposition of them by the testator; and this exposition corresponds with the apparent intention of the testator, as disclosed by the will, on considering it collectively, and is not in contravention of any rule or principle of law.

The court caused an account to be stated on principles adopted by them, viz. *Robert Pottenger*, as executor of *N. Gassaway*, was charged in account with the complainants with their proportion of the slaves, one half of *Robert Pottenger's* bond to the deceased, with interest thereon to the 1st of September 1791, and one third of the balance of other property, excluding bonds, &c. Upon the amount of these principal sums interest was charged to the 1st of January 1793, and one fourth of the whole sum expended in maintenance, &c. was then deducted. Interest was charged on the balance then due to the 1st of January 1794, when a like deduction was made, and so in like manner to the 1st of January 1795, and 1st of January 1796. On the balance then due interest was charged to the 1st of Ja-

nuary 1797, when the value of the slaves delivered to *John* *Gassaway* was deducted. Interest was then charged on the balance due to the 17th of November 1798, as also one half of all sums of money received on bonds, &c. with interest charged on the said several sums so received from the respective times, to the 17th of November 1798. A deduction was then made for property then delivered to *John Gassaway*. On the balance interest was charged to the 17th of January 1814, leaving a balance then due of $1195 95. *Decreed*, that the decree of the court of chancery, so far as the same relates to the appellant, *M.* *Pottenger*, be reversed and annulled. *Decreed* also, that the appellant, *M. Pottenger*, executrix of *R. Pottenger*, bring into the court of chancery, to be paid to the appellees, or pay to them, the sum of $1195 95, with interest thereon from this 17th of January 1814, until paid, &c. *Decreed* also, that each party pay their own costs incurred in this court and in the court of chancery. *Decreed* also, as to the residue of the said decree of the court of chancery, so far as the same relates to the appellant *J.* *Gassaway*, that the same be affirmed *nisi*, cause shown during this sitting of this court; and that if such cause be not shown, then the chancellor proceed to carry his said decree into full effect against the said *Gassaway*. *Decreed* also, that the chancellor pass all necessary orders or decrees for carrying this decree into full and complete effect against the said *M. Pottenger*, executor as aforesaid.

DECREE REVERSED.